## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUKAS KOTECKI**, individually and on behalf of all persons similarly situated, | Civil Action No.: 6:21-cv-6653 |
| Plaintiff, | **Complaint — Class and Collective Action** |
| v. | **Jury Trial Demanded** |
| **DCD DELIVERY, INC**, and **DHL EXPRESS (USA) INC. d.b.a. DHL EXPRESS** | |
| Defendants. | |

### CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Lukas Kotecki ("Plaintiff"), through his undersigned counsel, individually, and on behalf of all persons similarly situated, files this Class and Collective Action Complaint ("Complaint") against Defendants DCD Delivery, Inc. ("DCD") and DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") (collectively, "Defendants") seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and the New York Labor Law ("N.Y. Lab. Law") §§ 650 *et seq.*, § 198(a) and 12 NYCRR § 142-2.2. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

### INTRODUCTION

1. Defendant DCD provides last-mile delivery services to Defendant DHL. DCD employs Courier Drivers to deliver packages to DHL's customers.

2. This case is about Defendants' failure to comply with applicable wage laws and to pay its non-exempt Courier Drivers – such as Plaintiff and the proposed Classes (defined below) – for all time worked as required to meet DHL's delivery needs and deliver hundreds of DHL

packages each day.

## JURISDICTION AND VENUE

3. Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because the state law claims and federal statutory claim derive from a common nucleus of operative facts.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside and conduct business in this judicial District, and a substantial part of the events giving rise to Plaintiff's and potential Class and Collective Members' claims occurred within this judicial District.

## PARTIES

6. Plaintiff Lukas Kotecki is a citizen of New York and resides in Penfield, New York. Plaintiff Kotecki has worked for Defendants as a Courier Driver in New York since April 2020. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented to be a plaintiff in this action. *See* Ex. A.

7. DCD Delivery, Inc. ("DCD") is a registered New York corporation, with its corporate office in Canastota, New York.

8. Defendant DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") is an Ohio corporation and is headquartered at DHL's corporate office in Plantation, FL. DHL maintains facilities across New York including, without limitation, locations in Rochester, Buffalo, and Niagara.

9. During times relevant, Defendants DCD and DHL operated as business partners and acted as joint employers with respect to the Courier Drivers who delivered DHL's packages.

10. Defendant DCD employed Courier Drivers, such as Plaintiff, to deliver packages

to DHL customers.

11. At all times material to this action, Defendants have been engaged in commerce or in the production of goods for commerce as defined by the FLSA. Defendants' employees are engaged in interstate commerce and handle goods that have been moved in and/or produced in commerce.

12. Defendants' annual gross volume of sales made and/or business done exceeds $500,000.

13. The unlawful acts alleged in this Complaint were committed by Defendants and/or their officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

14. During times relevant, Plaintiff was an employee of Defendants and is covered by the FLSA.

15. During all times relevant, Defendants are employers and/or enterprises covered by the FLSA.

16. Defendants employ individuals in New York and potentially in other states.

## COLLECTIVE AND CLASS DEFINITIONS

17. Plaintiff Kotecki brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following collective:

> All current and former Courier Drivers or delivery drivers who were paid by Defendants to deliver packages for DHL in the United States during the applicable limitations period (the "FLSA Collective" or "Courier Drivers").

18. Plaintiff Kotecki brings Count II, III, and IV of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All current and former Courier Drivers or delivery drivers who were paid by Defendant DCD to deliver packages for DHL in New York during the applicable

3

limitations period (the "New York Class").

19. The FLSA Collective and the New York Class are together referred to as the "Classes."

20. Plaintiff reserves the right to redefine the Collective prior to notice or class certification, and thereafter, as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers Who Employed Plaintiff and the Courier Drivers

21. Defendant DHL is the world's leading delivery company, with a team of shipping professionals that transport goods to customers across the United States, as well as in other countries and territories, in a short period of time.

22. Defendant DHL holds itself out as a company able to provide domestic and international parcel pickup, delivery, and return solutions for business customers and individual customers, as well as e-commerce solutions and facilitation services.

23. Defendant DHL utilizes and relies on local and regional delivery vendors, such as Defendant DCD, for the essential services of transporting goods across the country from DHL facilities to DHL customers' doors in a short period of time.

24. Defendant DHL and the local and regional delivery vendors it partners with, such as Defendant DCD, are in the business of delivering goods across the United States.

25. Defendant DHL attempts to shield itself from liability by utilizing third-party delivery vendors, such as Defendant DCD, to provide the employees to transport their goods.

26. Defendant DCD provides delivery services for Defendant DHL at one or more of DHL's ServicePoint locations through and by the use of Courier Drivers such as Plaintiff and members of the proposed Classes.

27. Courier Drivers, such as Plaintiff and members of the proposed Classes, are engaged to fulfill DHL's delivery needs and to transport goods from DHL ServicePoint locations to DHL customers.

28. The goods that Courier Drivers transport from DHL ServicePoint locations to DHL customers originate, or are transformed into their final condition, in a different state than the delivery state.

29. The goods the Courier Drivers transport from DHL ServicePoint locations to DHL customers are not transformed or modified during the shipping process.

30. Courier Drivers deliver goods to DHL customers in the same condition as when they were shipped to the DHL ServicePoint.

31. Courier Drivers deliver goods to DHL customers that were shipped from around the United States.

32. Courier Drivers handle goods that travel interstate.

33. Courier Drivers operate vehicles in order to deliver DHL packages, which is vital to the commercial enterprise of the local and regional delivery vendors and DHL.

34. A strike by Courier Drivers, such as Plaintiff and members of the proposed Classes, would disrupt interstate commerce. Plaintiff and other Courier Drivers are necessary in order for interstate goods to make it from DHL ServicePoint locations to their final destination – DHL customers.

35. Courier Drivers, such as Plaintiff and members of the proposed Classes, work in the transportation industry.

36. Plaintiff and other Courier Drivers are not required to have a commercial driver's license as a condition of employment.

37. Plaintiff and other Courier Drivers drive vehicles that weigh less than 10,001 pounds.

38. The local and regional delivery vendors, such as Defendant DCD, operate courier and logistics businesses in providing vehicles and drivers to deliver goods on behalf of DHL and its affiliates.

39. The local and regional delivery vendors, such as Defendant DCD, provide delivery services for DHL at one or more of DHL's ServicePoint locations through and by the use of Courier Drivers, such as Plaintiff.

40. Courier Drivers for the local and regional delivery vendors, such as DCD, exclusively transport DHL packages to DHL customers.

41. Defendant DCD operates out of a DHL-controlled ServicePoint located in Rochester, NY.

42. Defendant DHL provides its local and regional delivery vendors, such as DCD, with DHL-branded materials including, without limitation: DHL-branded uniforms, DHL-branded badges, DHL-branded vehicles, and handheld scanning devices.

43. Courier Drivers, such as Plaintiff and members of the proposed Classes are required to use DHL-provided handheld scanning devices in order to scan packages.

44. DHL has the ability to track the location and delivery activity of Courier Drivers, such as Plaintiff and members of the proposed Classes, through their use of the handheld scanning devices provided by DHL.

45. DHL oversees and controls the work activities, work schedules, conditions and management of Courier Drivers, such as Plaintiff.

46. DHL assigns and provides routes to local and regional delivery vendors, such as

SER.

47. Courier Drivers for the local and regional delivery vendors that DHL utilizes, such as Defendant DCD, are required to wear DHL-branded shirts while making deliveries.

48. As required by DHL, Courier Drivers for the local and regional delivery vendors, such as DCD, must drive a DHL-branded vehicle while transporting and delivering DHL packages.

49. The vehicles that Courier Drivers operate are branded with DHL's logo.

50. When Courier Drivers present themselves to DHL customers, they are identifiable as DHL associates.

51. At all relevant times that DHL has been affiliated with and/or operated with SER, with respect to Plaintiff and other similarly-situated employees, DHL and DCD have acted as the "joint employers" of Plaintiff and other similarly-situated employees.

52. Throughout their employment with Defendants, Courier Drivers are required to comply with DHL's operational procedures and in meeting DHL's work expectations.

53. Although DHL does not directly pay Courier Drivers, its policies and expectations regarding payment and delivery goals dictated the delivery vendors' ability to pay the Courier Drivers for their overtime work.

54. Plaintiff Kotecki has worked for Defendants as a Courier Driver since April 2020 exclusively delivering packages on behalf of DHL.

### The Nature of Plaintiff and Other Courier Drivers' Work

55. The nature of the work performed by Courier Drivers is similar and standardized at each of the DHL ServicePoints where local and regional delivery vendors provide services for DHL.

56. The nature of the work performed by Courier Drivers is controlled and directed by both the local and regional delivery vendors and DHL.

57. Plaintiff Kotecki and other Courier Drivers began their shifts once they arrived at the DHL ServicePoint.

58. Plaintiff and other Courier Drivers were regularly required to report to the DHL ServicePoint between 6:00 am and 7:00 am on Monday mornings, with the shift ending between 6:00 pm and 7:00 pm.

59. Plaintiff and other Courier Drivers were regularly required to report to the DHL ServicePoint at approximately 8:45 am on all other weekdays, excluding Monday, with the shift ending between 6:30 pm and 7:30 pm.

60. Plaintiff and other Courier Drivers were regularly scheduled to work five (5) or more days per week.

61. Upon information and belief, Plaintiff and other Courier Drivers were required to complete all assigned routes regardless of length of shift.

62. Plaintiff regularly worked more than forty (40) hours per week. Plaintiff observed that other Courier Drivers routinely worked similar hours.

63. Defendants unilaterally selected the parcels and the quantity to be delivered. Plaintiff and other Courier Drivers could not reject delivery assignments.

64. Plaintiff observed that other Courier Drivers routinely worked similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

65. Plaintiff and other Courier Drivers are non-exempt for overtime purposes.

**Defendants Failed to Pay Plaintiff and the Courier Drivers Properly**

66. Plaintiff and other Courier Drivers regularly worked more than forty (40) hours per week.

67. Plaintiff regularly worked 50 to 60 hours per week. Plaintiff observed that other Courier Drivers routinely worked a similar number of hours per week.

68. Plaintiff and other Courier Drivers regularly worked five (5) or more days per week.

69. Defendants did not pay Plaintiff and other Courier Drivers for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums.

70. Plaintiff Kotecki was paid a flat rate of $850 per week and he was not paid an overtime premium, despite regularly working more than 40 hours per week.

71. Defendants were and are aware that Plaintiff Kotecki was and is a non-exempt employee and was and is entitled to overtime premiums for all hours worked in excess of forty (40) in a workweek. In particular, Defendant DCD informed Plaintiff Kotecki that he was entitled to overtime premiums in or around October 2020 and that he would need to begin clocking-in and out for overtime calculation purposes.

72. Despite DCD's awareness that Plaintiff Kotecki was entitled to overtime premiums, DCD willfully attempted to circumvent the FLSA and applicable state law by decreasing Kotecki's base-rate pay, adding the difference back on his paystub as fabricated "Overtime", and ultimately paying him the same total sum as his regular flat-rate, with no overtime compensation. For example, for the pay period of October 4, 2020 to October 10, 2020, Defendants paid Plaintiff a base pay of $642.46 and an overtime payment of $167.54, totaling his regular flat rate of $850, with no additional compensation for overtime (as seen below):

| PERSONAL AND CHECK INFORMATION | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) |
|---|---|---|---|---|---|
| Lukas Kotecki | | Salary | M40.00 | | 682.46 |
| | | Overtime | M9.82 | | 167.54 |
| | | Double Time | | | |
| | | Overtime | | | |
| Home Department: 650 ROC | | Total Hours | 49.82 | | |
| | | Gross Earnings | | | 850.00 |
| Pay Period: 10/04/20 to 10/10/20 | | Total Hrs Worked | 49.82 | | |
| Check Date: 10/16/20   Check #: 1415 | OTHER ITEMS | DESCRIPTION | | | THIS PERIOD ($) |

9

73. Defendants knew or should have known that decreasing the pay rate of an employee without providing proper wage notice is a violation of New York state law.

74. Despite these requirements, Defendants willfully and intentionally failed to comply with the requirements of the FLSA and applicable state law.

75. During the course of Plaintiff's employment, Plaintiff routinely worked through his meal break period without compensation due to the sheer volume of deliveries assigned to him and in order to meet the work expectations of Defendants. Plaintiff was additionally unable to take short rest breaks throughout his workday in order to keep up with the work demands imposed on him. Plaintiff observed that other Courier Drivers were also unable to take breaks in order to meet Defendants' work expectations.

76. Plaintiff and other Courier Drivers were not provided meal breaks. Accordingly, Plaintiff routinely worked without breaks and without proper pay. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

77. As a result of the heavy workload and grueling schedules imposed by Defendants, Plaintiff and other Courier Drivers were not able to take meal breaks.

78. Despite Plaintiff and other Courier Drivers' inability to take meal breaks, Defendants automatically deducted thirty (30) minutes for a meal break from each shift worked – regardless of whether Plaintiff and other Courier Drivers took a break during the workday.

79. Defendants were aware that Plaintiff and other Courier Drivers worked more than forty (40) hours per week and that Plaintiff and other Courier Drivers were not properly compensated for working through their breaks.

80. Defendants' pay policy, in which Plaintiff and other Courier Drivers are not properly compensated for all time worked, does not comply with the requirements of the Fair Labor Standards Act.

81. Defendants did not pay Plaintiff and other Courier Drivers for all hours worked, as required by law.

### The Failure to Properly Pay Courier Drivers Is Willful

82. Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

83. Even though the FLSA requires overtime premium compensation for all hours worked over 40 per week, Defendants do not pay Courier Drivers, such as Plaintiff, compensation for all hours worked.

84. Defendants knew that the Courier Drivers were entitled to compensation for all time worked because they notified Plaintiff that he and other Courier Drivers were entitled to overtime premiums.

85. Defendants have failed to pay Plaintiff and other Courier Drivers for all overtime compensation owed.

86. By failing to pay all the compensation owed to Plaintiff and other Courier Drivers, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

87. Defendants have not made good faith efforts to comply with the FLSA.

### COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

88. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

89. Plaintiff desires to pursue his FLSA claims on behalf of any individuals who opt-

in to this action pursuant to 29 U.S.C. § 216(b).

90. Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

91. Specifically, Defendants failed to compensate Plaintiff for all hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for all hours worked in excess of forty (40) per workweek.

92. The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

93. Defendants employ many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## **CLASS ACTION ALLEGATIONS**

94. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the New York Class as defined above.

95. The members of the New York Class are so numerous and dispersed that joinder of

all the members is impracticable. forty4

96. Plaintiff will fairly and adequately represent and protect the interests of the New York Class because there is no conflict between the claims of Plaintiff and those of the State Law Class, and Plaintiff's claims are typical of the claims of the State Law Class. Plaintiff's undersigned counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like the one at bar.

97. There are questions of law and fact common to the proposed New York Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendants violated and continue to violate New York state law through their policies and practices of not paying their Courier Drivers for all hours worked and overtime compensation.

98. Plaintiff's claims are typical of the claims of the New York Class in the following ways, without limitation: (a) Plaintiff is a member of the New York Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New York Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the New York Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the New York Class; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the New York Class members.

99. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions affecting only individual Class members. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New York Class are readily identifiable from Defendant's own employment records. Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual New York Class members that would establish incompatible standards of conduct for Defendants.

100. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the New York class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

101. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the New York Class. Plaintiff envision no difficulty in the management of this action as a class action.

### COUNT I
### Violation of the FLSA: Failure to Properly Pay Courier Drivers
### (On Behalf of Plaintiff and the FLSA Collective)

102. All previous paragraphs are incorporated as though fully set forth herein.

103. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

104. Defendants are subject to the wage requirements of the FLSA because Defendants are employers under 29 U.S.C. § 203(d).

105. At all relevant times, Defendants were "employers" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

106. During all relevant times, Plaintiff and Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

107. Plaintiff and Collective Members are not exempt from the requirements of the FLSA.

108. Plaintiff and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

109. Defendants' compensation scheme applicable to Plaintiff and Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

110. Defendants knowingly failed to properly compensate Plaintiff and Collective Members for all hours worked when they worked in excess of forty (40) hours per week, including by failing to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

111. Defendants also failed to create, keep, and preserve accurate records with respect to work performed by the Plaintiff and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

112. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

113. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for

unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the New York Labor Law: Failure to Pay Overtime Wages
### (On Behalf of Plaintiff and the New York Class)

114. All previous paragraphs are incorporated as though fully set forth herein.

115. 12 NYCRR § 142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate."

116. New York Labor Law § 663, provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees …"

117. Upon information and belief, Plaintiff and other members of the New York Class worked more than forty hours a week while working for Defendants.

118. At all relevant times to this action, Defendants failed to pay Plaintiff and other members of the New York Class one and one half times their hourly rate for all hours worked in excess of forty per work week, in violation of New York Labor Law §§ 650 et seq. and 12 NYCRR § 142-2.2.

119. Defendants' failure to pay wages and overtime compensation to Plaintiff and other members of the New York Class for work performed after the first 40 hours worked in a week was willful.

120. By the foregoing reasons, Defendants have violated New York Labor Law § 663 and 12 NYCRR § 142-2.2 and are liable to Plaintiff and other members of the New York Class in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**COUNT III**
**Violation of the New York Labor Law: Non-Reimbursement of**
**Expenses Incurred for the Benefit of Defendants by the Courier Drivers**
**(On Behalf of Plaintiff and the New York Class)**

121. All previous paragraphs are incorporated as though fully set forth herein.

122. New York Labor Law § 663 provides that, "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she may recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees …"

123. At all relevant times to this action, Plaintiff and other members of the New York Class were Defendants' employees within the meaning of New York Labor Law §§ 190(2) and 651(5) and 12 NYCRR § 142-2.14.

124. At all relevant times to this action, Defendants were the employers of Plaintiff other members of the New York Class within the meaning of New York Labor Laws §§ 190(3) and 651(6).

125. At all relevant times to this action, Defendants failed to pay Plaintiff and other members of the New York Class the statutory minimum wage for all hours worked in violation of New York Labor Law § 652 and 12 NYCRR § 142-2.1.

126. New York Labor Law requires employers to provide full reimbursement to employees in a timely manner for any employee payment of an expense necessary to perform job duties. New York Labor Law § 198(a).

127. Defendants willfully violated the rights of Plaintiff and other members of the New York Class by failing to pay them wages due and owing for work performed in violation of New York State Labor Law.

128. Due to Defendants' New York Labor Law violations, Plaintiff and other members

17

of the New York Class are entitled to recover from Defendants their unpaid minimum wages, in an amount to be determined at trial, plus interest, attorneys' fees and costs pursuant to New York Labor Law §§ 190 et seq., and §§ 650 et seq.

## COUNT IV
### New York Labor Law: Failure to Comply with Wage Notice and Recordkeeping Requirements
### (On Behalf of Plaintiff and the New York Class)

129.   All previous paragraphs are incorporated as though fully set forth herein.

130.   NYLL § 195(4) requires, among other things, that Defendants establish and maintain, for at least three years, payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

131.   NYLL § 661 requires that Defendants maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

132.   12 N.Y.C.R.R. § 142-2.6 requires that Defendants establish, maintain and preserve, for six years, weekly payroll records showing, inter alia, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

133.   NYLL § 195(3) requires that Defendants furnish each of its employees with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

134.   N.Y.C.R.R. § 142-2.7 requires Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

135.   Defendants did not provide the Plaintiffs and members of the New York Class with

18

the requisite notices and statements or maintain the time records of hours worked as described above.

136. As a result of Defendants' failure to comply with the notice and record keeping requirements of NYLL §195(1) and 195(3), Plaintiff and the New York Class Members are entitled to recover from Defendants all penalties provided by NYLL § 198(1)b and 198(1)d.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

   a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

   b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

   c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the New York Class;

   d. Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments, and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

   e. Liquidated damages to the fullest extent permitted under the law;

   f. Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

   g. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: October 22, 2021                     Respectfully submitted,

                                            /s/ Shanon J. Carson
                                            Shanon J. Carson
                                            Camille Fundora Rodriguez, *pro hac vice forthcoming*

Alexandra K. Piazza, *pro hac vice forthcoming*
Reginald L. Streater, *pro hac vice forthcoming*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
scarson@bm.net
crodriguez@bm.net
apiazza@bm.net
rstreater@bm.net

*Attorneys for Plaintiff and the
Proposed Collective and Class*